UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL WITKIN,<br><br>            Petitioner,<br><br>   vs.<br><br>ERIC ARNOLD,<br><br>            Respondent. | No.  2:14-cv-1709 GEB KJN P<br><br><br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner is a state prisoner proceeding without counsel with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a disciplinary conviction that he received in 2013 for "disruptive behavior."  He seeks federal habeas relief based on the First Amendment and the Fourteenth Amendment Due Process Clause.  Upon careful consideration of the record and the applicable law, the undersigned recommends that petitioner's application for habeas corpus relief be denied.

**I. Background**

On February 27, 2013, Librarian H. Kosher wrote a rules violation report (RVR) charging petitioner with "disruptive behavior," a serious Division "F" disciplinary infraction.  (ECF No. 1 at 72.)  The librarian alleged, in pertinent part, that:

> On Wednesday, 02-27-13, at approximately 1915 hours, Inmate Witkin (F-08703, 19-132-L), placed an appeal including attachments on my desk and requested a copy.  As I scanned the

1

> documents I noticed that once again he was making a false allegation against me, claiming that I retaliated against him by denying him PLU status on Saturday, Feb. 23, 2013, for his own notice to the court of his intention to appear telephonically at a motion hearing. On purpose, to distort his claim, he omitted the court order for which he had previously and legitimately been granted PLU status. I advised him that his attachment was incomplete. At this point, Inmate Witkin began to be disruptive. When C/O Tatum returned from downstairs, I advised him that Inmate Witkin would be leaving after he received his copies and signed a receipt. Inmate Witkin continued to blurt out the following: "On what authority are you asking me to leave? Are you going to search me? There are ten witnesses here. Are you going to check this computer?" C/O Tatum escorted Inmate Witkin out of the Law Library. Apparently, when Inmate Witkin returned to his housing unit, he tried to manipulate C/O Barkley and C/O Viera into documenting his supposed mistreatment, claiming he was denied copies of his appeal and threatening to file lawsuits against staff. This inmate has exhibited an ongoing pattern of disruptive behavior, including attempts to manipulate, intimidate or coerce staff, and has previously been verbally counseled on Nov. 3, 2012, Nov. 7, 2012, and Feb. 7, 2013. I am requesting that Inmate Witkin be barred from the Law Library for a period of ninety (90) days. He will be eligible for legal paging once per week. This Subject IS an inmate participant in the Mental Health Servides Delivery System at the CCCMS level of care and is aware of this report.

(ECF No. 1 at 72, 78.)

The disciplinary hearing on the RVR was held on March 8, 2013. (ECF No. 1 at 73.) Petitioner appeared at the hearing ready to proceed and stated that he was in good health. (Id.) The hearing officer read the charges to petitioner and advised him of the purpose of the hearing. (Id.) It was determined that all time constraints had been met. Petitioner did not object to proceeding with the disciplinary hearing. (Id.)

Petitioner pled "not guilty" and denied the charge against him, stating "There was a violation of department policy in that she read my confidential information." (Id.) Petitioner requested that three witnesses be present at the evidentiary hearing. (Id.) His request that librarian Kosher be present was granted, but his request that inmates Avila and Cooper be called as witnesses was denied based on "no relevant testimony." (Id.) Petitioner also mentioned at the hearing that he had "other inmate witnesses to this case." (Id.) Petitioner's request to call these additional witnesses was denied because petitioner "did not have any information on these witnesses." (Id.)

1    Librarian Kosher was called as a witness at the disciplinary hearing.  Petitioner asked the
2    following question:  "Did everything happen just as it is written on the 115?"  The librarian
3    responded, "yes."  (ECF No. 1 at 73.)  The Senior Hearing Officer (SHO) asked the librarian
4    whether petitioner "was disruptive in the law library on February 27, 2013?"  (ECF No. 1 at 74.)
5    She answered, "Yes."  The SHO then asked, "How was Witkin disruptive?"  (Id.)  The librarian
6    answered, "He stood up and started asking questions in a raised voice causing a disturbance and
7    disrupting others.  He was loud and argumentative."  (Id.)

        The SHO found petitioner guilty of a violation of Cal. Code Regs. Tit. 15, § 3005(a), disruptive behavior, based on a preponderance of the evidence introduced at the disciplinary hearing.  (ECF No. 1 at 74.)  That evidence consisted of "witness testimony" and "the Reporting Employee's Report, dated 02/27/13, authored by H. Kosher, Librarian, which states in part: 'Inmate WITKIN began to be disruptive.'"  (ECF No. 1 at 74.)  The hearing officer also noted that petitioner made a "partial admittance" by stating that "other inmates did stop and look to see what was going on."  (Id.)  Petitioner was assessed 30 days loss of time credits, 90 days of "no physical access to the law library, paging system only," and 90 days loss of certain privileges.  Petitioner was also "counseled and reprimanded on future behavior, expectations, and progressive discipline."  (Id.)

        Petitioner challenged his disciplinary conviction in a petition for a writ of habeas corpus filed in the Solano County Superior Court.  (ECF No. 15-2.)  Therein, he claimed that:  (1) the evidence was insufficient to support his conviction; (2) CCR § 3005 is unconstitutionally vague because it fails to give notice that asking questions is punishable; (3) his rights were violated because the SHO improperly denied his request for witnesses by falsely stating that petitioner did not have information on these witnesses, when in fact he had their affidavits; (4) the SHO improperly limited him to asking only one question of librarian Kosher; and (5) librarian Kosher issued the RVR in retaliation for his filing an inmate appeal and asking questions about his rights.  (ECF No. 15-2.)  The Superior Court denied all of these claims, reasoning as follows:

> The decision of the hearing officer is supported by some evidence in the record.  (*Superintendant v. Hill* (1985) 472 U.S. 445, 454-55 (hereafter *Hill*); *In re Zepeda* (2006) 141 Cal.App.4th 1493, 1497.)

3

> There is evidence that Petitioner was disruptive. The RVR indicates that Petitioner was blurting out questions in the law library and being disruptive. Librarian Kosher testified at the disciplinary hearing that Petitioner was being disruptive in the library by standing up and asking questions in a raised voice, and Petitioner was being loud and argumentative. At the hearing, Petitioner stated that the other inmates in the law library stopped and looked to see what was going on. On balance, this is some evidence to support the finding of guilt. In reviewing disciplinary decisions, courts do not examine the entire record, evaluate the credibility of witnesses, or reweigh the evidence. (*Hill, supra*, 472 U.S. at p. 456.)
>
> Petitioner provides no evidence that he exhausted administrative remedies concerning his claim that CCR § 3005(a) is unconstitutionally vague. (*In re Arias* (1986) 42 Cal.3d 667, 678; *In re Dexter* (1979) 25 Cal.3d 921, 925.) Even if he had exhausted, he fails to state a prima facie case. (*People v. Duvall* (1995) 9 Cal.4th 464, 474.) CCR § 3005(a) is not vague; a reasonable and practical construction can be given to its language. (*Williams v. Garcetti* (1993) 5 Cal.4th 561, 568.)
>
> Petitioner's claim that the SHO improperly denied his request for witnesses by falsely stating that Petitioner did not have information regarding his requested witnesses when he had signed affidavits from them lacks merit. Petitioner points to affidavits signed on March 9, 2013 by inmates Cooper, Freeman, and one other inmate in support of his defense. However, Petitioner's RVR hearing was on March 8, 2013. There is no indication that these affidavits or the information presented in them were presented to the SHO.
>
> With regard to his claim that the SHO refused to allow him to ask more than one question of the witness present, Petitioner has not provided any evidence that he exhausted administrative remedies. (*Arias, supra*, 42 Cal.3d at p. 678; *Dexter, supra*, 25 Cal.3d at p. 925.) This claim is not mentioned in either of the inmate appeals that Petitioner filed, nor is it mentioned in any of the inmate appeal decisions.
>
> As to his claim that the SHO generally violated his rights and prison regulations, Petitioner fails to state a prima facie case as he does not specifically identify what rights and prison regulations he believes were violated and why. (*Duvall, supra*, 9 Cal.4th at pp. 474-75.)
>
> Finally, Petitioner fails to state a prima facie case for retaliation. (*Rhodes v. Robinson* (9th Cir. 2004) 408 F.3d 559, 567-68; *Pratt v. Rowland* (9th Cir. 1995) 65 F.3d 802, 806.) There is evidence that the RVR was issued to achieve a legitimate penological goal: i.e., to punish Petitioner for raising his voice, becoming argumentative and disrupting others in the law library.
>
> The petition for writ of habeas corpus is DENIED.

(ECF No. 15-2.)

4

After the Superior Court denied his habeas petition, petitioner filed a petition for writ of habeas corpus in the California Court of Appeal, raising the same claims.  (ECF No. 15-3.)  That petition was summarily denied.  (ECF No. 15-4.)  Petitioner subsequently filed a petition for writ of habeas corpus in the California Supreme Court.  (ECF. No. 15-5.)  The Supreme Court ordered respondent to file an informal response to this petition.  (ECF No. 1 at 19.)  Respondent filed an informal response on April 23, 2014, and petitioner filed a reply on approximately May 11, 2014.  (ECF Nos. 15-6, 15-7.)  On June 25, 2014, the Supreme Court summarily denied the habeas petition.  (ECF No. 15-8.)

Petitioner filed a federal habeas petition in this court on July 21, 2014.  (ECF No. 1.)  Respondent filed an answer on November 25, 2014, and petitioner filed a reply on December 23, 2014.  (ECF Nos. 15, 16.)

**II.  Standards of Review Applicable to Habeas Corpus Claims**

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or application of state law.  See Wilson v. Corcoran, 562 U.S. 1,5 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision.

5

1   Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, 132 S. Ct.
2   38 (2011); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529
3   U.S. 362, 405-06 (2000)). Circuit court precedent "may be persuasive in determining what law is
4   clearly established and whether a state court applied that law unreasonably." Stanley, 633 F.3d at
5   859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent
6   may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a
7   specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, 133 S.
8   Ct. 1446, 1450 (2013) (citing Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012) (per curiam)).
9   Nor may it be used to "determine whether a particular rule of law is so widely accepted among
10  the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct.
11  Id. Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said
12  that there is "clearly established Federal law" governing that issue. Carey v. Musladin, 549 U.S.
13  70, 77 (2006).

14       A state court decision is "contrary to" clearly established federal law if it applies a rule
15  contradicting a holding of the Supreme Court or reaches a result different from Supreme Court
16  precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003).
17  Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the
18  writ if the state court identifies the correct governing legal principle from the Supreme Court's
19  decisions, but unreasonably applies that principle to the facts of the prisoner's case.[1] Lockyer v.
20  Andrade, 538 U.S. 63, 75 (2003); Williams, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002
21  (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that
22  court concludes in its independent judgment that the relevant state-court decision applied clearly
23  established federal law erroneously or incorrectly. Rather, that application must also be
24  unreasonable." Williams, 529 U.S. at 412. See also Schriro v. Landrigan, 550 U.S. 465, 473
25  (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent

---

[1] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." Stanley, 633 F.3d at 859 (quoting Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004)).

6

review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 785 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, 133 S. Ct. 1088, 1091 (2013).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d).  Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable."  Himes, 336 F.3d at 853.  Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief."  Richter, 562 U.S. at 98.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. Stancle v. Clay, 692 F.3d 948, 957 & n.3 (9th Cir. 2012).  While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief."  Richter, 562 U.S. at 98.  This court "must determine what arguments or theories ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court."  Id. at 102.  The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'"  Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo.  Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

**III. Petitioner's Claims**

    **A. Due Process Violations**

In his first ground for relief, petitioner claims that the SHO violated his right to due process when he "intentionally denied petitioner his witnesses and then falsified the record by indicating that petitioner had no information on his witnesses despite the fact he had all the pertinent information."  (ECF No. 1 at 5.)  The court assumes that these allegations refer to the

8

unidentified witnesses petitioner mentioned at the disciplinary hearing, who were not called because petitioner "did not have any information on these witnesses." (ECF No. 1 at 73.) In his supporting memorandum of points and authorities, petitioner also claims that his due process rights were violated when he was not allowed to call inmates Cooper and Avila as witnesses at the disciplinary hearing. (ECF No. 5 at 2.) As set forth above, petitioner's request to call these two witnesses was denied because the SHO determined they had "no relevant testimony." (ECF No. 1 at 73.)

In his second ground for relief, petitioner claims that the evidence introduced at the disciplinary hearing was insufficient to support his conviction for violating 15 CCR § 3005(a), a "serious" Division F offense. (ECF No. 1 at 7.) 15 CCR § 3005(a) provides: "Inmates and parolees shall obey all laws, regulations, and local procedures, and refrain from behavior which might lead to violence or disorder, or otherwise endangers facility, outside community or another person." Id. Title 15, § 3315 provides, in relevant part, that inmate misconduct reported on an RVR shall be classified as "serious" if it involves "a serious disruption of facility operations" or "a breach of or hazard to facility security." 15 CCR § 3315(a)(2)(C). Petitioner argues that his conduct did not violate either of these regulations because "there was no disruption whatsoever of facility operations, much less a 'serious disruption.'" (ECF No. 1 at 7.) Petitioner states that he was allowed to leave the library "on his own recognizance and that he was not 'handcuffed, nor pepper sprayed, nor even touched.'" (ECF No. 5 at 4.) Petitioner argues that if he had committed a "serious" rules violation prison authorities would, at a minimum, have sounded the yard alarm or filed an incident report, and the librarian would have activated her "personal alarm." (ECF No. 5 at 4, 7.) He argues there is not "a scintilla of evidence" to support his conviction for a serious rules violation. (ECF No. 5 at 4-5.)

After setting forth the applicable legal principles, the court evaluates petitioner's due process claims in turn below.

### 1. Legal Principles

It is well established that inmates subjected to disciplinary action are entitled to certain procedural protections under the Due Process Clause, but are not entitled to the full panoply of

9

1   rights afforded to criminal defendants. Wolff v. McDonnell, 418 U.S. 539, 556 (1974); see also
2   Superintendent v. Hill, 472 U.S. 445, 455-56 (1985). The Ninth Circuit has observed that prison
3   disciplinary proceedings command the least amount of due process along the prosecution
4   continuum. United States v. Segal, 549 F.2d 1293, 1296-99 (9th Cir. 1977).

5       An inmate is entitled to no less than 24 hours advance written notice of the charge against
6   him as well as a written statement of the evidence relied upon by prison officials and the reasons
7   for any disciplinary action taken. See Wolff, 418 U.S. at 563. The disciplinary hearing must be
8   conducted by a person or body that is "sufficiently impartial to satisfy the Due Process Clause."
9   Wolff, 418 U.S. at 571. An inmate also has a right to a hearing at which he may "call witnesses
10  and present documentary evidence in his defense when permitting him to do so will not be unduly
11  hazardous to institutional safety or correctional goals." Id. at 566. Prison officials may also
12  refuse to call witnesses for "irrelevance" or "lack of necessity." Id. See also Ponte v. Real, 471
13  U.S. 491, 495 (1985). The burden of proving adequate justification for denial of a request to
14  present witnesses rests with the prison officials. Bostic v. Carlson, 884 F.2d 1267, 1273 (9th Cir.
15  1989).

16      The decision rendered on a disciplinary charge must be supported by "some evidence" in
17  the record. Hill, 472 U.S. at 455. A finding of guilt on a prison disciplinary charge cannot be
18  "without support" or "arbitrary." Id. at 457. The "some evidence" standard is "minimally
19  stringent," and a decision must be upheld if there is any reliable evidence in the record that could
20  support the conclusion reached by the fact finder. Powell v. Gomez, 33 F.3d 39, 40 (9th Cir.
21  1994) (citing Hill, 472 U.S. at 455-56 and Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987)).
22  See also Burnsworth v. Gunderson, 179 F.3d 771, 773 (9th Cir. 1990); Zimmerlee v. Keeney, 831
23  F.2d 183, 186 (9th Cir. 1987). Determining whether this standard is satisfied in a particular case
24  does not require examination of the entire record, independent assessment of the credibility of
25  witnesses, or the weighing of evidence. Toussaint v. McCarthy, 801 F.2d 1080, 1105 (9th Cir.
26  1986), abrogated in part on other grounds by Sandin v. Connor, 515 U.S. 472 (1995). Indeed, in
27  examining the record, a court is not to make its own assessment of the credibility of witnesses or
28  /////

re-weigh the evidence. Hill, 472 U.S. at 455. The question is whether there is any reliable evidence in the record that could support the decision reached. Toussaint, 801 F.2d at 1105.

Where a protected liberty interest exists, the requirements imposed by the Due Process Clause are "dependent upon the particular situation being examined." Hewitt v. Helms, 459 U.S. 460, 472 (1983). The process due is such procedural protection as may be "necessary to ensure that the decision . . . is neither arbitrary nor erroneous." Washington v. Harper, 494 U.S. 210, 228 (1990). In identifying the safeguards required in the context of disciplinary proceedings, courts must remember "the legitimate institutional needs of assuring the safety of inmates and prisoners" and avoid "burdensome administrative requirements that might be susceptible to manipulation." Hill, 472 U.S. at 454-55. The requirements of due process in the prison context involve a balancing of inmate rights and institutional security concerns, with a recognition that broad discretion must be accorded to prison officials. Wolff, 418 U.S. at 560-63.

### 2. Sufficiency of the Evidence

A review of the court record reflects that the requirements of procedural due process were satisfied with regard to petitioner's disciplinary proceedings. The RVR states, and petitioner does not deny, that petitioner received all applicable reports, including the RVR, at least 24 hours in advance of the hearing. (ECF No. 1 at 72-74.) The RVR contained the written statement of the evidence relied upon by prison officials and the reasons for the disciplinary action taken against petitioner. (ECF No. 1 at 72-74.)

There was "some evidence" supporting petitioner's disciplinary conviction for behavior which might lead to disorder or a serious disruption of facility operations. The disciplinary hearing officer found petitioner guilty of this charge, relying on the allegations by librarian Kosher in the RVR. These included Kosher's statements that petitioner "began to be disruptive" and "continued to blurt out" questions when he was told that he would be escorted from the library. (ECF No. 1 at 72.) The hearing officer also relied on "witness testimony," which included Kosher's testimony that petitioner was disruptive when he stood up and started asking questions "in a raised voice" and was "loud and argumentative." The SHO also noted petitioner's statement that other inmates stopped what they were doing and looked to see "what was going

1  on." (ECF No. 1 at 74.) In addition, the RVR mentioned that petitioner had an "ongoing pattern
2  of disruptive behavior" and that he had been verbally counseled on this behavior on three
3  previous occasions. (ECF No. 1 at 78.) All of this constitutes "some evidence" to support
4  petitioner's conviction for engaging in behavior that "might lead" to disorder or "a serious
5  disruption of facility operations." 15 CCR § 3315 (a)(1)(B-C).

6       The determination of the California Superior Court that petitioner's disciplinary
7  conviction was supported by sufficient evidence is not unreasonable in light of the minimally
8  stringent nature of that standard of proof. It is not the duty of this court to act as the hearing
9  officer and re-determine the nature of petitioner's offenses and punishment. See Hill, 472 U.S. at
10 455. As noted above, this court may not independently assess the credibility of witnesses or re-
11 weigh the evidence in determining whether "some evidence" supports a prison disciplinary
12 conviction. Hill, 472 U.S. at 455. The result of a prison disciplinary proceeding will be
13 overturned by a federal court "only where there is no evidence whatsoever to support the decision
14 of the prison officials." Reeves v. Pettcox, 19 F.3d 1060, 1062 (5th Cir. 1994). That is not the
15 case here. The disciplinary hearing officer was entitled to rely on the allegations contained in the
16 RVR and the statements of petitioner and librarian Kosher at the disciplinary hearing to find
17 petitioner guilty of the charged offense. Bostic, 884 F.2d at 1273 (relying on staff's description
18 of incident as some evidence for disciplinary charge). Accordingly, petitioner is not entitled to
19 relief on this claim.

20      **3. Witnesses**

21    Petitioner also challenges the SHO's denial of his request to call inmate witnesses. The
22 RVR states that petitioner requested inmates Avila and Cooper by name, and also "mentioned"
23 other unidentified inmate witnesses. These unidentified inmate witnesses were disallowed
24 because petitioner "did not have any information on these witnesses." (ECF No. 1 at 73.)
25 Petitioner alleges that the SHO "falsified the record to state that petitioner 'did not have any
26 information on' his other witnesses." (ECF No. 5 at 2-3.)

27      Petitioner has filed affidavits from several potential inmate witnesses. In one such
28 affidavit, inmate Cooper declares that after librarian Kosher asked Officer Tatum to remove

12

petitioner from the library, petitioner asked, "Are you kicking me out of the library for exercising my First Amendment rights . . . with all these witnesses here?" and then asked Kosher and Tatum to check his computer to make sure he had not damaged it. (ECF No. 15-1 at 48.) Inmate Cooper also declares that petitioner "never raised his voice, became abusive, or disrupted the library in any way." (ECF No. 15-1 at 48.) Inmate Freeman and another inmate (whose name is not decipherable) declare that petitioner asked the librarian whether she was "kicking him out of the library for exercising his First Amendment rights." These two inmates also declare that petitioner asked librarian Kosher and Officer Tatum to check his computer, but that he "never got loud or disruptive in any way, he simply picked up his research materials and left." (ECF No. 15-1 at 49, 50.) All three of these affidavits were signed on March 9, 2013, the day after petitioner's disciplinary hearing was conducted.

Petitioner states that he was aware of the information contained in these affidavits at the time of the disciplinary hearing. He insists that he "had their information at the hearing and it was dishonestly suppressed by the hearing officer." (ECF No. 16 at 3.) However, petitioner does not explain what he told the SHO about these inmates at the hearing, whether he identified them by name, or what he said about the substance of their proposed testimony. It is clear that the affidavits themselves, which were not signed until March 9, 2013, were not presented to the disciplinary hearing officer on March 8. There is no other evidence regarding what petitioner may have told the SHO orally at the hearing about any of his proposed inmate witnesses. Under these circumstances, it does not appear to this court that the SHO's decision to exclude these unidentified witnesses violated petitioner's right to procedural due process. See Bostic, 884 F.2d at 1274 (an inmate "must inform the committee of the nature of the testimony each witness will deliver in order to allow the committee to determine whether institutional concerns would preclude calling the witnesses").

Petitioner also claims that the hearing officer violated his right to due process in refusing to allow him to call inmates Cooper and Avila as witnesses based on a finding that they had "no relevant testimony." (ECF No. 5 at 2.) Petitioner alleges, "as to petitioner's inmate witnesses, the SHO conceded that petitioner did have the information on two witnesses but he arbitrarily

13

deemed their testimony irrelevant, despite petitioner's explanation that the testimony went straight to the heart of his factual innocence." (ECF No. 5 at 2.)  Petitioner informs the court these two witnesses "would have testified similarly to the affiants."  (ECF No. 5 at 4.)

Respondent argues that petitioner's claim regarding inmate witnesses Cooper and Avila is unexhausted.  It is true that exhaustion of state court remedies is a prerequisite to the granting of a petition for a writ of habeas corpus.  28 U.S.C. §§ 2254(b)(1).  However, notwithstanding petitioner's failure to exhaust these claims, the court recommends that they be denied on the merits.  See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State").

Petitioner is entitled to habeas relief on his claims regarding inmate witnesses only if the alleged errors are deemed prejudicial under the "harmless error" test articulated in Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993).  Fry v. Pliler, 551 U.S. 112, 121-22 (2007) (a federal court must assess the prejudicial impact of an error under the Brecht standard in all habeas cases).  Under Brecht, "the standard for determining whether habeas relief must be granted is whether the . . . error 'had substantial and injurious effect or influence in determining the jury's verdict.'" Brecht, 507 U.S. at 623, 637.  If a federal habeas judge is in "grave doubt" about whether a constitutional  error "had substantial and injurious effect or influence in determining the jury's verdict," the error is not harmless and "the petitioner must win." Id. at 436, 445.  The erroneous denial of witnesses at a disciplinary hearing is subject to harmless error review.  Knight v. Evans, No. C 05-3670 SBA (PR), 2008 U.S. Dist. LEXIS 79058, * (N.D. Cal. Sept. 4, 2008) (citing Grossman v. Bruce, 447 F.3d 801, 805 (10th Cir. 2006) (joining the Second, Fourth, and Seventh Circuits applying harmless error review to disciplinary proceedings in federal prisons).

Assuming arguendo that prison authorities erred in refusing to allow petitioner to call inmate witnesses, any error was harmless in light of the evidence against him.  The librarian testified at the disciplinary hearing that petitioner spoke in a raised voice and was loud and argumentative.  The affidavits of petitioner's three proposed witnesses confirm that petitioner starting asking hostile and argumentative questions immediately after Officer Tatum came to

escort him out of the library. Petitioner stated at the disciplinary hearing that other inmates stopped what they were doing and looked around, indicating that petitioner was asking his questions in a raised voice. The SHO apparently believed the testimony of librarian Kosher that petitioner was acting in a disruptive manner in the library. There was also evidence in the RVR that petitioner had "exhibited an ongoing pattern of disruptive behavior." (ECF No. 1 at 78.) The opinion of other inmates that petitioner's behavior did not rise to the level of being "disruptive" would not have changed the outcome of these proceedings. Under the circumstances of this case, this court is not left in "grave doubt" as to whether the denial of petitioner's request to call inmate witnesses had a substantial and injurious effect on the outcome of petitioner's disciplinary proceedings. In the court's view, the outcome would have been the same even if all of the inmate witnesses had testified at the disciplinary hearing.

The decision of the California courts that petitioner's due process rights were not violated by the refusal of the SHO to call his inmate witnesses at his disciplinary hearing is not contrary to or an unreasonable application of United States Supreme Court authority. Accordingly, petitioner is not entitled to federal habeas relief on these claims.

### B. Petitioner's First Amendment Claims

#### 1. Whether 14 CCR § 3005(a) is Void for Vagueness

In his third ground for relief, petitioner claims that 15 CCR § 3005(a) is unconstitutionally vague. (ECF No. 1 at 8.) He states that he is raising a "facial and as applied challenge to 15 CCR § 3005(a)." (ECF No. 1 at 8.) Petitioner argues that the regulation "fails to give any reasonable notice of what specific conduct is prohibited and it can be interpreted to punish any conduct, as it was here to punish speech." (ECF No. 1 at 8.) He contends that "there is no possible way petitioner could have known he could be penalized thereunder for asking questions or using the appeals process." (ECF No. 5 at 5.) In the traverse, petitioner states that he has observed "as many as 50 arguments" between librarian Kosher and other inmates which "were started by the librarian's unlawful attempts to obstruct inmate access to the courts." (ECF No. 16 at 9.) He includes affidavits from some of these inmates. (ECF No. 16 at 15-18.) Petitioner argues that he was unlawfully disciplined based on the content of his prison grievance complaining about the

15

denial of access to the courts.  (ECF No. 16 at 15-18.)

Assuming arguendo that the void-for-vagueness doctrine applies to prison regulations such as the one at issue here, petitioner is not entitled to habeas relief on this claim.  A statute or regulation is void for vagueness "if it fails to give adequate notice to people of ordinary intelligence concerning the conduct it proscribes or if it invites arbitrary and discriminatory enforcement."  United States v. Doremus, 888 F.2d 630, 634 (9th Cir. 1989).  A statute violates the Due Process Clause "if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits . . . ."  Desertrain v. City of Los Angeles, 754 F.3d 1147, 1155 (9th Cir. 2014) (quoting  Giaccio v. Pennsylvania, 382 U.S. 399, 402 (1966)).  However, "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity."  United States v. Williams, 553 U.S. 285, 304 (2008) (quoting Ward v. Rock Against Racism, 491 U.S. 781, 794 (1989)).  Further, "[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others."  Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 495 (1982).  "One to whose conduct a statute clearly applies may not successfully challenge it for vagueness."  Parker v. Levy, 417 U.S. 733, 756 (1974).  A reviewing court should "therefore examine the complainant's conduct before analyzing other hypothetical applications of the law."  Village of Hoffman Estates, 455 U.S. at 495.

Petitioner's actions in blurting out argumentative questions in a voice loud enough to cause other inmates to look up from their work in the library has the potential to be disruptive under any definition of that term.  Petitioner was not charged with a violation of §3005(a) because he asked questions or filed a grievance, but because he created a disturbance in the library.  In this regard, none of the evidence introduced against petitioner at the disciplinary hearing involved his prison grievance or the content of his questions to the librarian.  Petitioner's actions in the library clearly fall within the language of the regulation and would have put an ordinary person on notice that he could be in violation of CCR § 3005(a).  Further, the language of the regulation itself is sufficient to put a person of ordinary intelligence on notice of the type of conduct it proscribes.  See Uribe v. Taylor, No. 2:10-CV-02615-DAD P, 2012 WL 4953176, at *4 (E.D. Cal. Oct. 15,

2012) ("Stalking clearly falls within [CCR §3005(a)] and the court does not find the regulation itself to be unconstitutionally vague). Cf. Berry v. Gomez, 108 F.3d 336 (9th Cir. 1997) (petitioner's disciplinary conviction for violating CCR § 3005(a) overturned where "the board's unusual and unexpected interpretation of the regulation's language to imply that Berry's false accusations during an internal investigation could lead to disorder or violence violated due process").

The California Superior Court found that CCR § 3005(a) is not constitutionally vague because "a reasonable and practical construction can be given to its language." (ECF No. 15-2.) For the foregoing reasons, the Superior Court's decision is not contrary to or an unreasonable application of clearly established federal law. See 28 U.S.C. § 2254(d)(1). Accordingly, petitioner is not entitled to relief on this claim.

**2. Whether Petitioner's Conviction Violates his Right to Free Speech**

In his fourth ground for relief, petitioner claims that his conviction violates his First Amendment rights because "the specific acts allegedly committed by petitioner, using the inmate appeals process and asking questions, are both protected by the First Amendment and cannot constitutionally be punished." (ECF No. 1 at 10.) He contends that "all of the conduct alleged by the RVR is protected under the First Amendment." (ECF No. 5 at 6.) Petitioner argues that he was charged with a prison violation for filing a prison grievance. (ECF No. 5 at 6.)

Petitioner's claim that he was disciplined for asserting his free speech rights lacks a factual basis and should be denied on that basis. Petitioner was not charged with a disciplinary violation because he filed a grievance or asked questions, but because he was loud and disruptive in the law library. Because his factual allegations are not supported by the record, petitioner is not entitled to relief on this claim.[2]

---

[2] In his fifth ground for relief, petitioner claims that his conviction violates the First Amendment because the RVR was issued by librarian Kosher in retaliation for filing an inmate grievance against her. (ECF No. 1 at 12.) Petitioner argues that the "retaliatory action chilled the exercise of petitioner's First Amendment rights and violated California prison regulations." (ECF No. 1 at 12.) In the traverse, petitioner informs the court that he is withdrawing this claim because success "would not shorten his incarceration." (ECF No. 16 at 1.) Accordingly, the court will not address petitioner's retaliation claim.

17

**C. Evidentiary Hearing**

Petitioner requests an evidentiary hearing on the federal habeas claims before this court.

Pursuant to 28 U.S.C. § 2254(e)(2), an evidentiary hearing is appropriate under the following circumstances:

> (e)(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that-
>
> (A) the claim relies on-
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense[.]

Under this statutory scheme, a district court presented with a request for an evidentiary hearing must first determine whether a factual basis exists in the record to support a petitioner's claims and, if not, whether an evidentiary hearing "might be appropriate." Baja v. Ducharme, 187 F.3d 1075, 1078 (9th Cir. 1999). See also Earp v. Ornoski, 431 F.3d 1158, 1166 (9th Cir. 2005); Insyxiengmay v. Morgan, 403 F.3d 657, 669-70 (9th Cir. 2005). A petitioner requesting an evidentiary hearing must also demonstrate that he has presented a "colorable claim for relief." Earp, 431 F.3d at 1167 (citing Insyxiengmay, 403 F.3d at 670, Stankewitz v. Woodford, 365 F.3d 706, 708 (9th Cir. 2004) and Phillips v. Woodford, 267 F.3d 966, 973 (9th Cir. 2001)). To show that a claim is "colorable," a petitioner is "required to allege specific facts which, if true, would entitle him to relief." Ortiz v. Stewart, 149 F.3d 923, 934 (9th Cir. 1998) (internal quotation marks and citation omitted). In addition, the United States Supreme Court has now held that federal habeas review under 28 U.S.C. § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits" and "that evidence introduced in federal court has no bearing on" such review. Cullen v. Pinholster, 563 U.S. 170, 185 (2011).

/////

The court concludes that no additional factual supplementation is necessary in this case and that an evidentiary hearing is not appropriate with respect to the claims raised in the instant petition. The facts alleged in support of these claims, even if established at a hearing, would not entitle petitioner to federal habeas relief. Therefore, petitioner's request for an evidentiary hearing should be denied.

**IV. Conclusion**

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(3).  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  May 16, 2016

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/du/witkin1709.hc